IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

WILLIAM MOORE,                          )
         Petitioner,             )         CASE NO.      2:07-cv-423 BJR
                                        )
        v.                              )
                                        )         ORDER DENYING PETITION
                                        )         FOR WRIT OF HABEAS
KEN CLARK,                              )         CORPUS
        Respondent.

_____

## INTRODUCTION

Petitioner William Moore is a California state prisoner who filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Having considered the petition, respondent's answer, the traverse, and the balance of the record, the court hereby finds and rules as follows.

## PROCEDURAL HISTORY

On May 23, 2002, Petitioner was found guilty by a jury for violations of California Penal Code §§ 288.5, 288a (b)(2), 288(c)(1), and 261.5(d).[1] On July 19, 2002, Petitioner's motion for a new trial was denied and he was sentenced to a term of 18 years in California state prison. On

---

[1] Petitioner was convicted of nine felony counts, consisting of one count of continuous sexual abuse of a child, from 1995 to 1999, and eight counts of separate sexual acts with the same person. Of the eight acts, four occurred between 1999 and 2001, prior to the victim's fifteenth birthday, and four thereafter, from 2001 to 2002.

1

July 17, 2002, Petitioner filed his Notice of Appeal in the Court of Appeal of the State of California, Third Appellate District. Oral argument was held on December 16, 2003, and on January 20, 2004, the Appellate Court issued an opinion affirming the judgment in all respects. Petitioner filed a petition for review with the California Supreme Court, which was denied on April 14, 2004.

On December 13, 2003, Petitioner filed a writ for habeas corpus with the Third District Court of Appeal, which was denied on January 29, 2004, with citations directing that the petition be filed in Superior Court. Petitioner re-filed the habeas petition in the Superior Court of California, Nevada County, on February 3, 2004, pursuant to the January 29, 2004 order. The Superior Court issued an order to show cause, and a response and traverse were filed. On May 12, 2004, the Superior Court issued an order for an evidentiary hearing which was held on July 28, 2004.[2] The habeas petition was denied in all respects at the conclusion of the hearing.

Thereafter, the Petitioner filed a habeas petition with the California Court of Appeal, Third Appellate District, on January 19, 2005. After requesting additional records from counsel, the Appellate Court denied the petition on May 12, 2005. Petitioner filed a petition for review with the California Supreme Court on June 24, 2005, which was denied on May 10, 2006.

On March 17, 2008, Petitioner filed a second habeas petition in California Superior Court, Nevada County, which was denied on January 4, 2008. Petitioner appealed and the California Court of Appeal, Third Appellate District denied the petition without comment on February 14, 2009. The California Supreme Court denied the petition without comment on August 27, 2008.

---

[2] The court limited the evidentiary hearing to testimony related to Petitioner's assertion that he was provided with ineffective assistance of counsel.

2

Petitioner filed the present petition for writ of habeas corpus in the United States District Court for the Eastern District of California on March 5, 2007. The case was reassigned to this court on March 2, 2010. It is now ripe for review.

## FACTS

The facts of this case are set forth in the unpublished opinion of the Third District Court of Appeal for the State of California, *People v. Moore*, 2004 WL 79099 (January 20, 2004), the relevant portion of which is stated as follows: [3]

Victim A.H. was 16 years old when she testified at Petitioner's criminal trial. Her mother married Petitioner when she was five or six years old and she lived with him up until the date of her accusation at age fifteen. In the fall of 1994, when A.H. was seven or eight years old, she began experiencing nightly leg cramps and Petitioner would enter her room and massage her legs. Shortly thereafter, Petitioner started lying down on her bed where he would tell her a story, kiss her and fondle her chest. After a few months, the molestations escalated to two-to-three-times-per-week. Eventually, Petitioner began to have oral sex with A.H. The incidents usually happened late at night, when the others in the house were asleep.

When A.H. was 11 years old, Petitioner had intercourse with her. The intercourse and other sexual activities continued regularly, several times a week. When A.H. was 13, the sexual activity stopped for a while. She thought Petitioner had become more afraid of getting caught, and her mother was having some health problems. But then, around A.H.'s 14th birthday, the activity resumed and continued as before, but on a more regular basis. The sexual activity continued unabated until shortly before the matter was reported to police in June 2001.

---

[3] The statement of facts in the appellate opinion is presumed correct. 28 U.S.C. § 2254(d)(2), (e)(1).

3

Victim A.H. was the prosecution's only witness at trial. Petitioner presented two witnesses, his stepmother and his stepsister, both of whom testified to his general poor health and to the fact that they had never observed inappropriate behaviour between the victim and Petitioner.

## **GROUNDS FOR RELIEF**

Petitioner raises the following as grounds for relief:

1.      His repeated requests for a continuance of the trial date were erroneously denied;

2.      The exclusion of Dr. Lee Coleman's testimony denied him due process;

3.      The trial court's instruction on the concealment of two defense witnesses was prejudicial;

4.      The evidence on Counts 2 through 9 was insufficient;

5.       Counts 2, 3, 4, 7, 8 and 9 must be reversed for lack of a unanimity instruction;

6.      He was denied effective assistance of counsel at trial;

7.      The imposition of upper terms on his sentence denied him a Sixth Amendment right under *Blakely v. Washington*, 542 U.S. 296 (2004);

8.      He was denied fundamental fairness because the judge who presided over his trial also presided over his first state court habeas proceedings;

9.      He was denied effective assistance of counsel during his first state court habeas proceeding; and

10.      He was denied the right to conflict-free counsel.

4

## **DISCUSSION**

This case has a long and convoluted procedural history. Prior to filing the present petition

for habeas relief, Petitioner twice sought relief through the California state habeas process, in

addition to seeking relief through direct appeal of his conviction. Each of the claims raised in the

present petition (save one that is addressed below) were raised in one of the prior proceedings;

however, no single proceeding addressed all of the claims. Accordingly, in order to address the

currently pending claims, it was necessary for this court to review the decisions of several

California state courts. For the sake of clarity, this court will organized Petitioner's claims as

they were addressed by the various California state courts. The following claims were raised in

Petitioner's direct appeal and rejected by the California Court of Appeal, Third District:

> (1) The trial court erred by denying the defense request for a continuance of
> the trial date; (2) Petitioner was denied due process by the exclusion of Dr. Lee
> Coleman's testimony; (3) Petitioner was prejudiced by the trial court's instruction
> to the jury regarding failure to timely disclose defense witnesses; (4) The evidence
> concerning Counts 2 through 9 was insufficient to convict; and (5) Counts 2, 3, 6,
> 7, 8, and 9 must be reversed for lack of unanimity instruct.

The following claims were raised in Petitioner's first state habeas petition and rejected by the

Superior Court of California, Nevada County, after an evidentiary hearing:

> (1) Petitioner was denied effective assistance of counsel by the failure of trial
> counsel to call a treating physician to testify in support of his defense that he
> was gravely ill at the time of the alleged molestation; (2) Petitioner was denied
> effective assistance of counsel by the failure of trial counsel to call Rachel Andes
> as a witness; (3) Petitioner was denied effective assistance of counsel by trial
> counsel's failure to timely disclose Dr. Lee Coleman, Sandra Hershey and Santia
> Enos as a defense witnesses.

The following claims were raised in the second state habeas petition and rejected by the Superior

Court of California, Nevada County:

> (1) The upper term sentence violates Petitioner's Sixth Amendment rights to a
> trial by jury; (2) The trial court violated his due process rights by excluding Dr.
> Lee Coleman's testimony; and (3) he was denied effective assistance of counsel

in his first state habeas proceeding.

A.    Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a petition for writ of habeas corpus may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  The AEDPA established a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal quotations omitted).  Only if the state court's decision does not meet the criteria set forth in § 2254(d)(1) does this court conduct a de novo review of the petitioner's habeas claims. *Panetti v. Quarterman*, 551 U.S. 930 (2007).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id*.  The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

B.    Appellate Claims

     *1.*    *Rejection of the Continuance Claim Was Reasonable*

Petitioner was charged on February 5, 2002 and arraigned February 19, 2002. *See Moore*, 2004 WL 79099, *3. The trial date was set for May 21, 2002. *Id*. At that time, defense counsel noted that he was "double set" for that date but that matters might settle. *Id*. On April 3, 2002, defense counsel filed a motion to continue the trial, citing his other scheduled trials as the reason for the request (defense counsel had a four-week civil trial set to start on May 7th, a criminal case set for trial on May 14th, another civil matter set for trial on the same day as Petitioner's trial date, and a criminal case set to start on May 29th). *Id*. The motion was heard on April 12, 2002, and was denied, subject to renewal with 48 hours' notice if settlements did not clear defense counsel's calendar. *Id*. On May 3, 2002, defense counsel filed another motion for continuance which was heard on May 6, 2002. *Id*. at *4. The trial court denied the motion noting that only two of the conflicting cases remained pending. *Id*. Of those two, one was scheduled to begin after Petitioner's criminal trial and the second was a civil case, and as such, did not deserve priority over Petitioner's case involving a minor victim. *Id*. (Ultimately the second case settled prior to Petitioner's trial.) The trial court concluded that defense counsel had adequate time to prepare for trial in the weeks that remained before the trial date. *Id*.

Petitioner contends that the trial court abused its discretion by denying his counsel's repeated requests for a continuance of the trial date. He alleges that the trial court's "improper denial of the continuance motion was a denial of due process, and the denial of the Petitioner's right to present a defense, as guaranteed under the Fifth, Sixth, and Fourteenth Amendments, and Petitioner's right to the effective assistance of counsel...." (Dkt. No. 37 at 19.) He argues that his

7

counsel was not adequately prepared to represent him at trial and he was unable to present expert testimony regarding the reliability of the victim's testimony.[4]

Petitioner raised this argument on direct appeal. The California Court of Appeal rejected the argument, noting that "a conviction should not be reversed for the denial of a continuance absent a showing of abuse of discretion and prejudice to the defendant." *Moore*, 2004 WL 79099, at *5 (internal quotations omitted). The Appellate Court noted that the trial court properly found that defense counsel's scheduling problems had been resolved and counsel had time remaining to prepare for trial." *Id*. The Court further concluded that Petitioner's remaining ground for a continuance—to secure Dr. Coleman's testimony—did not justify a continuance because Petitioner did not satisfy his burden of showing that he had exercised due diligence in attempting to secure Dr. Coleman's attendance at trial. *Id*.

Petitioner fails to point to Supreme Court precedent that clearly establishes the right to a trial continuance outside the context of the right to counsel. Therefore, to the extent that Petitioner's claim seeks something other than the examination of the right to counsel, federal habeas relief on this claim is foreclosed. 28 U.S.C. § 2254(d)(1). To the extent Petitioner is claiming he was denied the right to counsel by the trial court's refusal to grant a continuance, the

---

[4] Petitioner hoped to introduce the testimony of Dr. Lee Coleman. His counsel contacted Dr. Coleman on May 1st and learned that the doctor would be on vacation from May 3rd to May 17th. *See Moore*, 2004 WL 79099 at *4. Defense counsel cited this as an additional ground for his May 3, 2002 continuance motion. Id. The trial court rejected Dr. Coleman's unavailability as a basis for granting a continuance because defense counsel had not contacted Dr. Coleman until just four days prior. *Id*. Thereafter, on May 17th, the defense provided the prosecution with a witness list that included Dr. Coleman (the witness list disclosure was untimely—defense counsel had been sanctioned previously for failing to respond to the prosecution's discovery request for a list of all witnesses the defense intended to call at trial). *Id*. at *3-4. The prosecution objected to the untimely disclosure of Dr. Coleman's testimony. *Id*. at *4. The trial court excluded Dr. Coleman's testimony, noting, among other things, that the eleventh-hour presentation of Dr. Coleman appeared to be another attempt by counsel to obtain the previously denied continuance. The court also noted "serious questions" as to whether Dr. Coleman's testimony was admissible. (Dkt. No. 37 at 18; *Moore*, at *3-*6.)

Supreme Court has stated that the right to counsel is only implicated by "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'...." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). The Court has noted that the trial judge's "latitude" in "balancing" even a Constitution-based counsel demand "against the demands of [the trial court] calendar" is "wide." *United States v. Gonzales-Lopez*, 548 U.S. 140, 152 (2006).

This court does not find that the Appellate Court's determination was objectively unreasonable. *Williams*, 529 U.S. at 409-10. The Appellate Court noted the trial court's reasons for denying the continuance—the fact that defense counsel's calendar had cleared in sufficient time for counsel to prepare for trial, and the fact that counsel had not demonstrated due diligence in attempting to secure Dr. Coleman's attendance at trial—and found that the trial court's actions were neither unreasoned nor arbitrary. *See, e.g., Ungar v. Sarafite*, 376 U.S. 575, 591 (1964) (stating that "[t]hese matters are, of course, arguable, and other judges in other courts might well grant a continuance in these circumstances, but the fact that something is arguable does not make it unconstitutional.") Accordingly, this claim provides no basis for federal habeas relief and must be denied.

### 2.    Rejection of the Evidence Exclusion Claim Was Reasonable

Petitioner argued on direct appeal that the trial court's exclusion of Dr. Coleman's testimony as a discovery sanction denied him his Sixth and Fourteenth Amendment rights to compulsory process and due process. The California Court of Appeal rejected this argument noting that the record supported an implied finding by the trial court of significant prejudice and willful conduct motivated by a desire to obtain a tactical advantage at trial. *Moore*, 2004 WL 79099 at *6-*7. The Appellate Court noted that, in Petitioner's case, sanctions less than preclusion would have been ineffective. The defense disclosed its witnesses just two court days

before the trial. Therefore, neither an order for immediate disclosure nor contempt for

disobedience of the discovery order would have given the prosecution a meaningful opportunity

to present expert testimony in opposition to Dr. Coleman. A jury instruction might have invited

the jurors to speculate that other experts disagreed with Dr. Coleman, but it could not have filled

the evidentiary void by supplying information that was beyond the jury's common

understanding. Finally, the Appellate Court concluded, a continuance would have rewarded

Petitioner for his willful disobedience of the discovery order by giving him just what he had been

asking for throughout April and May 2002. *Id*. at *7.

Moreover, the Appellate Court held that Petitioner was not prejudice by the exclusion of

Dr. Coleman's testimony. The motion *in limine* filed at the beginning of his trial suggested that

the doctor would testify regarding suggestibility in the context of child witnesses. The motion

relied in part on *United States v. Rouse*, 111 F.3d 561 (8th Cir. 1997), which involved sexual

abuse of children under the age of twelve. In *Rouse*, the court concluded a qualified expert could

explain the "dangers of implanted memory and suggestive practices when interviewing or

questioning child witnesses." *Id*. at 571. However, in his appellate briefing, Petitioner argued that

the victim in his case was "not a child," was "not experiencing an 'ordeal'" and her "young

memory" would not "fade[]" or become "confused." Because Petitioner's victim was

interviewed when she was fifteen, and testified when she was sixteen, Petitioner's present

argument suggests the "dangers of implanted memory and suggestive practices" were minimal at

best. *Moore*, 2004 WL 79099 at *7. The California Appellate Court noted that the trial court felt

that the victim was "among the most believable and credible witnesses" that the court had heard

in its almost 20 years of experience. *Id*. at *7. Based on this record, the Appellate Court

concluded that the exclusion of Dr. Coleman's testimony was harmless beyond a reasonable doubt. [5] *Id.*

Petitioner made no showing that the Appellate Court's decision was objectively unreasonable in light of clearly established Supreme Court precedent. In *Michigan v. Lucas*, 500 U.S. 145 (1991), the Supreme Court held that probative evidence may, in certain circumstances, be precluded when a criminal defendant fails to comply with a valid discovery rule. *Id.* at 151-52 *citing Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646 (1988) (preclusion of witness appropriate when defendant violated state procedural rule by failing to identify a particular defense witness in response to a pretrial discovery request). The California Appellate Court adopted the trial court's finding that the defense's delay in disclosing Dr. Coleman was deliberate and calculated to obtain the very thing—a continuance—the judge previously denied. *Moore*, 2004 WL 79099 at *6-7. The Appellate Court further recounted why there would have been prejudice to the prosecution from the delayed disclosure, absent the preclusion of the evidence. *Id*. This court does not find that the Appellate Court's failure to find that the trial court abused its discretion in excluding Dr. Coleman's testimony was objectively unreasonable. Accordingly, this claim fails to state a basis for federal habeas relief.

> 3.      *Rejection of the Late Disclosure Instruction Claim Was Reasonable*

In addition to failing to timely disclose Dr. Coleman, trial counsel failed to timely disclose that Petitioner's stepmother, Sandra Hershey, and stepsister, Santia Enos, would be called as defense witnesses. Prior to trial, the prosecution objected to Ms. Hershey's and Ms.

---

[5] This court notes that Dr. Coleman's declaration of his proposed testimony submitted in support of Petitioner's motion for a new trial did not limit his testimony to the problems inherent in a "child" witness's testimony, and did detail specific "serious problems" with the police investigation of Petitioner's case. (Dkt. No. 51 at 527-531.) However, the Appellate Court had to issue its ruling based on what was before the trial court at the time of its decision to exclude Dr. Coleman's testimony, in other words, the *motion in limine* filed before the trial began.

Enos' testimony on the ground that they had not been timely disclosed. The trial court declined

to exclude their testimony, but instructed the jury as to the witnesses' late disclosure. On direct

appeal, Petitioner argued that the instruction was improper because the "late disclosure was

attributed entirely to the unexpected denial of the continuance motion." *Moore*, 2004 WL 79099

at *8. The Appellate Court disagreed, finding that Petitioner never offered any justification for

the late disclosure of Hershey and Enos, therefore some sanction was proper. In addition,

Petitioner did not contend that a lesser or different sanction would have been more appropriate.

Accordingly, the Appellate Court concluded that the trial court had not abused its discretion in

instructing the jury regarding the defense's late witness disclosure. *Id.*

Petitioner does not cite any clearly established Supreme Court precedent addressing this

issue. As such, this court must defer to the California Appellate Court's decision. *See Moses v.*

*Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (holding that in the absence of direct Supreme Court

precedent squarely addressing the issue, there is simply nothing "clearly established" in that

precedent, against which a state decision can be evaluated for reasonableness). Accordingly, the

Petitioner is foreclosed from federal habeas relief on this claim.

4.    *Rejection of the General Proof Claim Was Reasonable*

Petitioner argues that his convictions on Counts 2 though 9 must be reversed because the

evidence presented at trial was not sufficiently specific as to dates, locales or acts for a rational

trier of fact to find him guilty beyond a reasonable doubt. As a matter of federal constitutional

law, the "Due Process Clause protects the accused against conviction expect upon proof beyond

a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

*Jaun H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) quoting *In re Winship*, 397 U.S. 358, 364

(1970). A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging

the sufficiency of the evidence used to obtain a state conviction on federal due process grounds. This court is precluded from either re-weighing the evidence or assessing the credibility of the witnesses. In *Jackson v. Virginia*, the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979). After the AEDPA, federal courts must apply the standards of *Jackson* with an additional layer of deference. 28 U.S.C. § 2254(d). As such, the role of this court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain a conviction. That such evidence exists is clearly established by the record in this case.

Petitioner raised this argument on direct appeal and the Appellate Court upheld the convictions, finding that the victim provided substantial testimony as to each of the essential elements of each count. *Moore*, 2004 WL 79099 at *8-9.  The victim provided detailed descriptions of lewd conduct, foreign object penetration, oral copulation and sexual intercourse, and placed those acts within the applicable statute of limitations. *Id*. The Appellate Court noted that the victim was a persuasive witness. *Id*. at *7. This court concludes that after reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Accordingly, there is no basis for federal habeas relief on this claim.

     5.    *Rejection of the Unanimity Claim Was Reasonable*

Petitioner's final contention on direct appeal was that his convictions on Counts 2, 3, 8 and 9 must be reversed because the trial court's unanimity instruction (CALJIC No. 17.01) was limited inexplicably to Counts 1, 4, and 5. On appeal, the state conceded the error but argued it

was harmless. The Appellate Court acknowledged the error, but concluded it was not prejudicial. Petitioner raises the same argument in the present petition.

As discussed above, this court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)-(2). Petitioner has cited no Supreme Court precedent in support of his contention that he was denied due process because the trial court failed to give the proper unanimity instruction, and with good reason. The Supreme Court conclusively has held in *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628 (1972) that criminal defendants in state court have no federal constitutional right to a unanimous jury verdict. *Id*. at 410-12. Accordingly, there is no basis for federal habeas relief on this claim.

C.      First State Habeas Petition

1.      *Petitioner Was Not Denied Effective Assistance of Trial Counsel*

It is axiomatic that a defendant is guaranteed effective assistance of counsel. *See* U.S. Const. amend. VI. To challenge that assistance, a defendant must show that his attorney committed "errors…so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In other words, Petitioner must show both that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Id*.

14

A deficient performance is one in which the attorney made errors so serious that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. Petitioner must show that his attorney's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for his attorney's ineffectiveness, the result would have been different. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). However, *Strickland* and its progeny do not mandate that this court act as a "Monday morning quarterback" in reviewing tactical decisions. To the contrary, the Supreme Court admonished in *Strickland* that judicial scrutiny of counsel's performance must be highly deferential. 466 U.S. at 689.

Petitioner alleges that his trial counsel made three prejudicial errors: (1) trial counsel failed to present at trial medical testimony of Petitioner's physical ailments; (2) trial counsel failed to call Rachel Andes as a witness to discredit the victim's allegations and explain the evolution of the victim's accusations; and (3) trial counsel failed to timely disclose defense expert witness, Dr. Coleman, and lay witnesses Sandra Hershey and Santia Enos.

a.    <u>Failure to Present Medical Testimony of Physical Condition</u>

It is undisputed that Petitioner suffers from several serious medical ailments. He has a history of peptic ulcer disease dating from 1982. In March 1998, nearly one-third of his stomach was removed and his intestines rerouted due to the ulcer condition. Petitioner was diagnosed with Parkinson's Disease in 1999 with symptoms that affect the left side of this body. In addition, Petitioner had surgery to repair a hernia in August, 2000.

At trial, the victim described continuing sexual acts over a period of years, sometimes as much as three or four times a week.[6] Petitioner's defense at trial was that with his multiple physical disabilities he could not have participated in such a "vigorous sex life" as alleged by the victim; therefore, the victim must be lying.[7]  Defense counsel presented this defense through the testimony of Petitioner's stepmother, Sandra Hershey, and asked the jury to infer it from Petitioner's general sickly appearance at trial, but failed to produce any medical testimony to substantiate the defense.

In closing arguments, the prosecution argued that Petitioner's claimed physical disabilities were fabricated. The prosecution made much of the fact that the defense did not present medical testimony to substantiate Petitioner's ailments and what impact, if any, those ailments may have had on his desire or ability to conduct sexual activity. Petitioner contends he was denied effective assistance of counsel by the failure of his trial counsel to call his treating neurologist and treating gastroenterologist to confirm his claim that he was seriously ill and debilitated throughout the period of the alleged sexual abuse.

Petitioner raised this argument in his state habeas petition and an evidentiary hearing was held on this claim. At the hearing, Petitioner presented Dr. Dale Wadatz, a gastroenterologist who began treating Petitioner for severe refectory epigastria disease in 1997. Dr. Wadatz testified that during an appointment on December 16, 1997 Petitioner complained of erectile dysfunction or impotence and the doctor referred him to a neurologist.[8] (Dkt. No. 51, Evid.

---

[6] The victim did testify that after she turned thirteen (on November 29, 1998) there was a break in the sexual activity, stating that the "intercourse pretty much stopped." The victim attributed this to a suicide attempt by her mother. (Dkt. No. 51 at 111, 123-124.) The sexual activity resumed on "a more regular basis" after the victim turned fourteen. *Id.* at 77.

[7] Petitioner never alleges that he was impotent, merely that he had a decreased sexual desire.

[8] Apparently, Petitioner never followed up on the referral.

Hearing Trans. at 13.) Dr. Wadatz also testified to his belief that the 1998 stomach surgery may have affected Petitioner's sexual activity: "I don't think it would necessarily impair an erection, but I think it would probably take away ones desire for sexual activity, because it might be uncomfortable or painful." *Id.* at 9. He testified that this affect would probably last a couple months post-surgery. *Id.*

Dr. Wadatz saw Petitioner again on March 18, 2002. The surgery recovery was normal at that point, but Petitioner complained of recurrent abdominal pain and weight loss, and a problem with swallowing.[9] Finally, Dr. Wadatz was then asked about the relationship between Parkinson's disease and impotence. He stated: "I'm certainly not an expert in this area, but I do know that there is such a relationship that a certain percent of patients with Parkinson's do suffer with impotence." *Id.* at 13.

Dr. William Blaha testified at the evidentiary hearing for the respondent. Dr. Blaha is a neurologist who has treated Petitioner since February, 1999. At that time, Petitioner showed symptoms of hemi-Parkinson's Disease affecting the left half of his body. *Id.* at 84, 107. Dr. Blaha testified that in a letter dated February 5, 1999 to Dr. Cole, Petitioner's primary care physician at the time, Dr. Blaha noted that Petitioner had no sexual dysfunction. *Id.* at 96. However, at follow-up appointments in July and November 1999, Dr. Blaha's medical notes indicate that Petitioner complained of a low libido. *Id.* at 103 and 108. In addition, during an appointment on February 27, 2002,[10] Petitioner complained of "sharp pain" and "pressure in the groin" area and the doctor concluded that given these complaints, Petitioner would likely experience pain during sexual intercourse. *Id.* at 98 and 106.

---

[9] This appointment occurred about sixteen months after the victim's report to the police.

[10] This appointment occurred after Petitioner was charged.

Petitioner's trial counsel, Michael Phillips, testified at the evidentiary hearing. Mr. Phillips testified that due to the time constraints imposed by the trial court's refusal to continue the trial date, he was unable to prepare properly for the trial, particularly in regard to obtaining medical testimony concerning Petitioner's physical condition:

> Obviously, in hindsight, as I sit here today, I would have done it differently, I would have subpoenaed [Petitioner's] treating physician in sufficient time so that the court would allow them [sic] to testify. At the time, given the time constraints, I did not have any doctors under subpoena, and was merely going to have my client testify, because I think his poor health is apparent by looking at him, or possibly through his mother [sic] testifying, who intimately knew his medical history and his poor health."

*Id*. at 54. He also testified that he contacted Dr. Blaha before the trial started but he felt that "Dr. Blaha was really reluctant to—in my opinion, I think was reluctant to offer any assistance along those lines…I think Dr. Blaha was concerned. He learned of the nature of the allegations, and I think he was very uncomfortable talking…with me at all, just because he felt he would be helping an alleged child molester. I would characterize the conversation with Dr. Blaha as hostile." *Id*. at 58-9. He further testified that he recalled that Dr. Blaha told him that "Parkinson's by itself does not mean that a man can't have an erection and have intercourse, and pretty much that is where [Dr. Blaha] left it." *Id*. at 60.

The Superior Court rejected Petitioner's claim that his trial counsel provided deficient counsel. The court focused on how reliable it found the victim's testimony at trial: "I have been a judge over twenty years. She was not only the most persuasive victim of sexual assault in her testimony, it was probably the most persuasive testimony I ever heard. She did not in any way attempt to exaggerate or to minimize. She told exactly what she thought had happened." *Id*. at 151. In addition, the court determined that the victim's description of the timing and frequency of the sexual activity was consistent with Petitioner's medical conditions. *Id*. at 152. The court

18

also pointed out that trial counsel's decision not to call Dr. Blaha as a witness was a tactical decision based on counsel's perception that the doctor was biased against his client and would be unlikely to provide useful testimony. *Id*. The court did not address the prejudice prong of *Strickland*, presumably because the court did not find deficient representation.

This court agrees that trial counsel's representation of Petitioner was not deficient. It is clear from trial counsel's testimony at the evidentiary hearing that he was exercising his judgment when he decided not to subpoena Petitioner's treating physicians. Not only is such a decision "within the range of competence demanded of attorneys in criminal cases," it is exactly the type of tactical decision that this court must accord a "strong presumption of reasonableness." *See Strickland,* 466 U.S. at 688-689 (judicial scrutiny of counsel's performance must be highly deferential); *Hill*, 474 U.S. at 57.

In addition, Petitioner failed to affirmatively establish that if his treating physicians had testified at his trial, it would have resulted in a more favorable outcome—in other words, that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. at 687.  The victim's testimony was remarkably consistent with the proposed medical testimony. The victim alleged that Petitioner had intercourse with her three to four times a week in 1996 and 1997. (Dkt. No. 51, Trial Trans. at 77, 109.) Then she alleged that the sexual activity stopped in 1998 *Id*. at 77-78. Petitioner complained of impotence to Dr. Wadatz during an appointment on December 16, 1997 (Dkt. No. 51, Evid. Hearing at 13), which would explain why the sexual activity stopped in 1998. In addition, Petitioner's stomach surgery was in March, 1998 (*id*. at 8), which again, coincides with the victim's testimony. On February 19, 1999, Petitioner saw Dr. Blaha and disavowed having any sexual dysfunction. *Id*. at 103. This too coincides with the

1    victim's testimony that the sexual activity resumed in 1999.[11] (Dkt. No. 51, Trial Trans. at 78,

2    90, and 125.) The February 18, 2002 appointment with Dr. Blaha during which Petitioner

3    complained of having pain during sexual intercourse is of little relevance because the

4    appointment occurred after Petitioner was charged with the crime.

5         The court also finds it doubtful that the proposed medical testimony would have been

6    persuasive in light of the evidence presented at trial that tended to establish that Petitioner was

7    physically capable of the sexual activity of which he was accused. For instance, the evidence

8    established that during the period in question, the Petitioner was involved in activities that

9    required substantial physical ability. Specifically, he worked as a traveling salesman, remodeled

10   his house from 1994 up to at least the time of the victim's charge, and worked full time at pastry

11   store he co-owned with his wife from 1997 to the time of the charge.  In addition, Petitioner

12   presented statements from Dr. Blaha and Dr. Cole at the time of his sentencing that indicated that

13   although Petitioner had the physical ailments complained of, they were not currently

14   "debilitating." (Dkt. No. 51, at 390-392.)

15                    b.      Failure to Call Rachel Andes as a Witness at Trial

16        Rachel Andes was a family friend and Petitioner's employee during the later period of the

17   alleged sexual abuse. (Dkt. No. 51, at 17) She used to babysit the victim and later became her

18   close confidant. *Id.* at 20. Ms. Andes was the person the victim first told about the abuse and Ms.

19   Andes is the person who notified the police when the victim initially did not want to go to the

20   police with her allegations.[12] Later Ms. Andes accompanied the victim to the police station and

---

[11] The court notes, however, that Petitioner complained of having a low libido to Dr. Blaha in July and November, 1999, which does not coincide with the victim's testimony.

[12] The victim was hesitant about going to the police because she had fallen in love with Petitioner and she did not want him to get in trouble. (Dkt. No. 9, at 73.)

sat in on the victim's interview with the detective. The prosecution had Ms. Andes on its witness list but did not call her to testify at trial. Defense counsel claim that he did not have Ms. Andes under subpoena because she was on the prosecution's witness list. *Id*. at 55. He was "shocked" when the prosecution did not call her as a witness stating: "In the ten years I have been doing criminal work, I have done quite a few jury trials, I don't think I ever had a prosecution rest, after just calling the complaining witness, so it did catch me by surprise." *Id*. at 56.

Petitioner claims that defense counsel was deficient for failing to present Ms. Andes at trial. He argues that Ms. Andes' testimony was important to establish that the victim had falsely accused the neighbor of raping her.[13] He also contends that Ms. Andes' role in the police investigation itself would have raised questions about the validity of the accusations.[14]

He raised this same argument in his state habeas petition. The Superior Court had the opportunity to observe Ms. Andes' testimony at the evidentiary hearing and concluded that the outcome of the trial would not have been different had she testified at the trial in light of the other evidence presented. Specifically, the Court observed that Ms. Andes did not demonstrate any "animosity or antagonism" towards Petitioner. *Id*. at 150. Instead, she gave persuasive testimony that substantiated the victim's story. *Id*. Based on this, the Court concluded that defense counsel's failure to call Ms. Andes as a witness did not prejudiced Petitioner's defense.

This court finds that the Superior Court decision rejecting petitioner's ineffective assistance of counsel claim with respect to Ms. Andes is not objectively unreasonable. The Superior Court's decision was based on its observation of Ms. Andes at the evidentiary

---

[13] Initially the victim told Ms. Andes that she had been raped by a neighbor, but when Ms. Andes questioned the victim further, the victim revealed that it was really the Petitioner who was sexually abusing her.

[14] Ms. Andes sat in on the police interview with the victim.

hearing—the court heard her testimony, observed her demeanor, and concluded that she was a persuasive witness whose testimony would not have changed the outcome of the trial. This court did not have the benefit of observing Ms. Andes' testimony and must rely on the Superior Court's judgment. *See Marshall v. Lonbeger*, 459 U.S. 422, 434 (1983) (28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them). Accordingly, there is no basis for federal habeas relief for this claim.

c.       Failure to Timely Disclose Defense Expert and Lay Witnesses

Petitioner argues that he was denied effective assistance of counsel by his attorney's failure to timely disclose defense expert, Dr. Coleman, and his stepmother and stepsister as witnesses. Defense counsel was obligated to disclose defense witnesses by April 21, 2002. He failed to do so. The trial court entered a discovery order on May 13, 2002 reprimanding defense counsel for his failure to timely respond to the prosecution's discovery requests. (Dkt. No. 51, at 251.) Defense counsel finally served the witness disclosure on May 17, 2002; trial began on May 21, 2002. (*Id.* at 305, 425, 446.) The trial court excluded the testimony of Dr. Coleman but allowed Ms. Hershey and Ms. Santos to testify, but with the inclusion of a late disclosure instruction to the jury. Petitioner argues that these sanctions were enough to tip the balance of the trial against petitioner and ensure his conviction.

Petitioner raised this same argument in his state habeas petition. The Superior Court rejected the argument, but failed to state its reasons for so doing. (Dkt. No. 51, at 153.) Where the dispositive state order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See*

22

*Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds). The scope of this review is for clear error of the state court ruling on the petition:

> Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. Only by that examination may we determine whether the state court's decision was objectively reasonable.

*Delgoado v. Lewis (Delgado II)*, 223 F.3d 976, 982 (9th Cir. 2000).

Presumably, the trial court rejected Petitioner's claim because it determined that defense counsel's failure to timely disclose Dr. Coleman was "part of a strategy to achieve a continuance with [the trial court] that has numerous times been denied."[15] *Moore*, 2004 WL 79099 at *6. In order words, it was a tactical trial decision to delay the disclosure and hope to garner a continuance and something less than an exclusion sanction. In response to the present petition, the State argues that it is all "too apparent that some rational attorney might believe there is a potential to be gained by sand-bagging the prosecution by delay disclosure of witnesses." (Dkt. No. 50 at 23.)

This court has looked to the record and finds that Petitioner was not prejudiced by counsel's error because Dr. Coleman's proposed testimony had little probative value. As discussed above, Dr. Coleman proposed testimony was about the "suggestibility" of "child witnesses" under the age of twelve. (Dkt. No. 51, 268-269, 527-531.) The victim was fifteen years old when she reported the crime and sixteen years old when she testified at trial, well

---

[15] In rejecting Petitioner's claim on appeal that he was denied due process by the trial court's exclusion of Dr. Coleman's testimony as a discovery sanction, the California Appellate Court determined that the trial court's finding was supported by the record, which showed several failed requests for a continuance and no justification for failing to timely contact, interview and disclose Dr. Coleman. *Id*.

beyond the alleged age of susceptibility. Indeed, testimony about the susceptibility of young victims could have tended to bolster the credibility of the older victim in this case. On this record, counsel's failure to timely disclose Dr. Coleman did not prejudice the outcome of the trial.

D.    Second State Habeas Petition

> 1.    *Petitioner Failed to Demonstrate that He Suffered Prejudice Due to His Counsel's Allegedly Deficient Assistance or Due to the Alleged Misconduct by the Habeas Court*

As discussed above, Petitioner filed his first state habeas petition in California Superior Court and Judge Bryan, the same judge who presided over his criminal trial, presided over the habeas proceeding. At the time, Petitioner did not object to Judge Bryan presiding over the proceedings. Petitioner raised the issue for the first time in his second habeas petition in which he alleged his appellate attorney provided him ineffective assistance of counsel by failing to challenge Judge Bryan under California's Civil Code § 170.6 in his prior writ proceeding. The Court denied the petition because he did not allege prejudice as a result of his counsel's alleged ineffective assistance.

Petitioner raises the same claim in the present petition, and this time alleges that his counsel's error caused him prejudice because Judge Bryan had previously excluded Dr. Coleman's testimony from his criminal trial, and thereby was likely to, and indeed did, exclude the doctor's testimony from the evidentiary hearing. However, Petitioner does not cite and this court is unable to find any Supreme Court authority prohibiting a state court judge from considering a habeas petition when that judge presided over the trial that is the subject of the petition. To the contrary, the court notes that in the federal equivalent to this situation, Rule 4(a) of the Federal Rules Governing §2255 Habeas Proceedings directs that a habeas petition "be

presented promptly to the judge of the district court who presided at the movant's trial and

sentenced him…."[16] Therefore, it cannot be said, under AEDPA, that there is clearly established

Supreme Court precedent addressing this issue, and as such, this court must defer to the state

court's decision. *See Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009).

Petitioner also claims that his state habeas petition was wrongly denied due to judicial

misconduct by Judge Bryan. Specifically, he points to the fact that Judge Bryan prohibited Dr.

Coleman from testifying at the evidentiary hearing. Petitioner raised this argument in his second

state habeas petition and the California courts rejected the claim, finding that Petitioner had

failed to exhaust his available remedies at the time the alleged misconduct occurred (such as

filing a motion for reconsideration or seeking appellate review). This court may not reach the

merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow

applicable state procedural rules in raising the claims…" *Sawyer v. Whitley*, 505 U.S. 333, 338

(1992). Accordingly, this claim provides no basis for federal habeas relief.

### 2. *Petitioner Is Not Entitled to Relief under Blakely*

Petitioner was sentenced to the upper limits of the sentencing range based in part on the

trial judge's adoption of facts in the probation report. (Dkt. No. 51, at 340.) Petitioner argues his

Sixth Amendment rights were violated when the trial court sentenced him to the upper term on

---

[16] In *Clemmon v. Wolfe*, 377 F.3d 322, 329 (3rd Cir. 2004), the Third Circuit exercised its supervisory power to require that each federal district court judge in the Third Circuit recuse herself from participating in a 28 U.S.C. §2254 habeas petition of a defendant raising any issue concerning the trial over which that judge presided in her former capacity as a state court judge. However, the Third Circuit specifically limited the opinion to the role of a federal judge pursuant to 28 U.S.C § 2254. *Id.* at 329, fn. 5 (stating that in contrast to a federal judge reviewing a §2255 petition, who is effectively reconsidering her rulings at trial, a federal judge reviewing a §2254 petition cannot reconsider the actions taken by a state judge, even if she had been the state judge.)

25

1   the basis of facts not found by a jury beyond a reasonable doubt in violation of *Blakely v.*

2   *Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004).

3          Petitioner raised this same claim in his second state habeas petition. The California

4   Supreme Court rejected the claim without comment. This left undisturbed the Superior Court

5   ruling that *Blakely* did not apply to Petitioner's case, as a matter of substantive law. (Dkt. No. 47,

6   137-138.)

7          Respondent argues that there is no basis for federal habeas relief on this claim because

8   the state court relied on at least one properly found aggravating circumstance.[17] This court

9   agrees. One of the facts adopted by the trial court in imposing the upper term limits is that

10  Petitioner took advantage of a position of trust. It is undisputed that Petitioner is the victim's

11  stepfather and that they lived to together at the time of the alleged abuse. Based on this, there is

12  little doubt that a jury would have concluded beyond a reasonable doubt that the facts of the

13  crime showed that Petitioner took advantage of a position of trust. Accordingly, Petitioner is not

14  entitled to relief on his *Blakely* claim. *See Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008).

15

16  E.     The Conflict of Counsel Claim Is Unexhausted

17         Petitioner claims, for the first time, that he was denied his due process right to a fair trial

18  because his trial counsel's law firm had a conflict of interest in representing him. Specifically, he

19  alleges that he learned for the first time in 2008 that in November, 2001 one of his trial counsel's

20  law partners represented a credit association in collecting a $7,949.42 judgment against

21  Petitioner and his wife. (Dkt. No. 37 at 65.) Petitioner argues that this "egregious conflict of

22  interest" demonstrates his trial counsel's "lack of loyalty" towards him, and accordingly, his

23

24  _____

25  [17] The court found: (1) Petitioner's conduct indicated planning, sophistication, and apparent
    grooming; (2) Petitioner took advantage of a position of trust; and (3) the crimes were
    independent of each other, each involving independent gratification, rather than being a single
    period of aberrant behavior. *Id*. at 412

conviction should be reversed "due to the lack of jurisdiction on the part of the Nevada County Superior Court[.]" *Id*. at 66.

Petitioner is required to exhaust his state remedies before seeking relief in federal court. Exhaustion of state remedies requires a petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner fairly presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim. *See Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999). Petitioner has failed to satisfy the exhaustion requirement with respect to this claim. Accordingly, he is barred from seeking federal habeas relief.

## CONCLUSION

Based on the foregoing, the Petition for Writ of Habeas Corpus is DENIED.

DATED this 6th day of August, 2010.

*/s/ Barbara Jacobs Rothstein*

Barbara Jacobs Rothstein
U.S. District Court Judge